# ROUSSEAU *v.* BROWN.

PATENTS; TREATIES, WHEN OPERATIVE; INTERFERENCE; FOREIGN AP-
PLICATIONS AND PATENTS AS AFFECTING PRIORITY OF INVENTION;
EVIDENCE; APPEALS TO SUPREME COURT OF THE UNITED STATES IN
INTERFERENCE CASES.

1. The International Convention for the Protection of Industrial Prop-
erty, concluded at Paris, March 20, 1883, acceded to by the United
States and proclaimed by the President June 11, 1887, is in the
nature of a contract between the parties thereto and is not self-
executing, and never having been given effect by Congressional
legislation remains without effect or operation in this country.
2. An application for a patent filed in a foreign patent office affords
no evidence of priority of invention in an interference proceeding
in the Patent Office in this country; *construing* R. S. U. S.,
Secs. 4886, 4887, as amended by act of March 3, 1887, and Sec.
4923.
3. A foreign patent is competent evidence under R. S. U. S., Sec. 4886,
on an issue of priority of invention in an interference proceeding,
to negative the alleged novelty of the invention described, but
only as of the date that it actually became a patent.
4. Where an alleged official copy of the specification and drawings
annexed to a French patent is introduced in evidence by one
of the parties to an interference, but no copy of the patent is
produced, the patent cannot be regarded as in evidence.
5. An appeal will not lie from nor will a writ of error be allowed by
this court to the Supreme Court of the United States, from a
decision in a patent interference proceeding, as no provision is
made by law for the entry of final judgments by this court in
such cases, but provision is only made for a return to the Com-
missioner of Patents of a certificate of the proceedings and
decision of this court to be entered of record in the Patent Office
to govern the further proceedings in the case; *construing* R. S.
U. S., Secs. 780 and 4914, and Sec. 8, act of Congress of Febru-
ary 9, 1893, creating this court.

No. 218.   Patent Appeals.   Submitted November 19, 1902.   Decided January 20, 1903.
Petition for allowance of appeal or writ of error to Supreme Court of United
States, January 21, 1903.   Denied February 4, 1903.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in an interference case.        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Worth Osgood* for the appellant, who also appeared in proper person

*Mr. R. T. Frazier* and *Mr. C. H. Howson* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the Patent Office, in the matter of an interference between the application of Louis Rousseau, a citizen of France, whose application was filed October 4, 1900, and the application of William J. Brown, filed September 8, 1900. The applications relate to a melting-furnace, and the issue declared is as follows:

" The combination of a melting-furnace made in halves, with flanges on each half, recesses in the lower half, a melting-pot having projections resting in the recesses, a combustion-chamber under the melting-pot, and flues at the side of the melting-pot."

All the tribunals in the Patent Office have concurred in awarding priority of invention to Brown, the senior party on the record. The facts of the case are but few, and admit of no serious dispute. It is shown by uncontroverted evidence that Brown conceived the invention of the issue sometime in the month of April, 1900, and reduced the invention to practice in the latter part of July, 1900. The witness Evans proves very clearly that the disclosure of the invention was made to him some time prior to April 24, 1900, but particularly on that date; and he further testifies that Brown was engaged in the construction of the subject of the invention from the time he explained it to witness until about August 2, 1900. The testimony of this witness is fully corroborated by the testimony of Howson, the solicitor of Brown, and also by that of Taylor, the molder employed in the Cramp & Sons brass-foundry. By the testimony of this last witness it is

fully shown that the furnace was constructed and put into practical use in the latter part of July, 1900.

Rousseau, a citizen of the French Republic, and the junior party on the record, offered no evidence in support of his preliminary statement, except a certain exhibit filed therewith, designated as "Rousseau's Exhibit, French Patent, C. S., Exr., October 5, 1901." But in his preliminary statement, he alleges that he filed his application for a patent in the patent office of France, on the same invention that is in issue in this case, on the 2d day of April, 1900, and on that application he obtained a French patent dated July 18, 1900; and he therefore claims priority for his invention, under the International Convention of 1883, and he submits to the Patent Office in support of his claim what he alleges to be an official copy of his French patent; but which in fact appears to be only a copy of the specifications and drawings annexed to a French patent taken by Louis Rousseau, on an application filed April 2, 1900, and delivered to Rousseau on the 18th day of July, 1900. The patent itself has not been exhibited. It is upon this claim and exhibit that Rousseau practically rests his case. He rests his case entirely upon the dates that are shown in the French specifications belonging to the French patent, but which patent has not been produced.

The ruling of the Commissioner of Patents being adverse to the claim of Rousseau, he has appealed to this court; and the grounds assigned for the appeal are, first, that the Commissioner erred in awarding priority of invention to Brown, when, in point of fact and of law, Rousseau was the first and original inventor of the matter in issue; second, that the Commissioner erred in denying to Rousseau the benefit of his date of application for a French patent, namely, April 2, 1900, in view of the provisions of the International Convention for the Protection of Industrial Property, concluded at Paris, March 20, 1883, and in view of the existing statutes; third, that the Commissioner erred in relying upon the authority of the cases of *Butterworth* v. *Boral* and *Kymer* v. *Ecob*, 97 O. G. 1596, and the citations therein, in view of

the act revising and amending the statutes relating to patents, approved March 3, 1897; fourth, that he erred in holding that under the statutes, the date of a foreign application for a patent cannot be recognized as a date of invention, and that only the date of the issue of the foreign patent can be so recognized under the law.

With respect to the Convention for the Protection of Industrial Property, and the final protocol thereto, between several states and nations, concluded at Paris, March 20, 1883, and subsequently acceded to by the United States, and proclaimed by the President thereof, June 11, 1887, there would seem to be no ground whatever for contending that it has any application to this case. The convention is in the nature of a contract between the parties thereto, and is not self-executing. It requires the action of Congress to give it full force and effect. This is the construction that has been placed upon it by most of the parties to it, and they have adopted legislation giving effect to it; though France and Spain it would seem give effect to it without express legislation. (Note to foreign patent law, by Greeley, p. 208.) But without regard to the action of other states, the uniform construction of that convention by the Patent Office officials, and by the courts of this country, has been that the convention is not self-executing, but requires the aid of an act of Congress. Very soon after the accession to the convention by this country, and the proclamation thereof, the  question arose in the Patent Office as to the effect of the convention by its own force, and the question was referred to the Attorney-General for his opinion thereon. The question was very fully and carefully examined, and Mr. Attorney-General Miller concluded and held that the treaty was a reciprocal one, each party to it covenanting to grant in the future to the subjects and citizens of the other parties certain special rights in consideration of the granting of like special rights to its subjects and citizens. That it is a contract operative in the future infra-territorially, and is therefore not self-executing, but requires legislative action to render it effective for the modification of the provisions of existing laws.

47 O. G. 397. This ruling has been uniformly adhered to in the Patent Office, and it has been fully sanctioned by several Circuit Court decisions. *Butterworth* v. *Boral,* 97 O. G. 1596, and the cases therein cited; *Electrical Accumulator Co.* v. *Julien Electric Co.,* C. D. 1893, p. 437. And that construction is in accordance with the settled rule of construction in such cases as announced by the Supreme Court of the United States, in the case of *Foster & Elam* v. *Neilson,* 2 Pet. 253, 313.

In the case just cited, Chief Justice Marshall, in delivering the opinion of the court, said:

"A treaty is in its nature a contract between two nations, not a legislative act. It does not generally effect, of itself, the object to be accomplished; especially so far as its operation is infra-territorial; but is carried into execution by the sovereign power of the respective parties to the instrument. In the United States a different principle is established. Our Constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself without the aid of any legislative provision. But when the terms of the stipulations import a contract, when either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial department; and the legislature must execute the contract before it can become a rule for the courts."

It is clear, the various stipulations of the convention of 1883 are of the character that require legislation to give them full effect, and such legislation has not been had, and consequently the convention remains without effect or operation.

But Rousseau contends that if the International Convention be without effect, and therefore not available to secure to him, in this interference proceeding, the benefit of the date of his application for the French patent, yet sections 4886 and 4887 of the Revised Statutes of the United States, as amended by the act of Congress of March 3, 1897, place him upon the footing of an American or domestic inventor, and that there is no longer any distinction to be made as be-

tween a citizen of the United States applying for a patent
in his own country, and a foreign inventor who has applied
for a patent in a foreign country and afterward applies for
a similar patent in this country; that they are both to be gov-
erned by the same rules and regulations in all matters of pro-
cedure for obtaining a patent.    In other words, Rousseau
contends that his application for the French patent is en-
titled to have the same effect allowed as it would have had
had it been filed in the American patent office on the day
when it was filed in the French patent office; and having
the date of that filing, to wit, the 2d day of April, 1900, in
the office here, he would be the first to conceive and the first
to obtain a constructive reduction to practice, and would
therefore be the prior inventor.    But we fail to discover
anything to justify this contention.    The sections of the
Revised Statutes of the United States referred to make no
such provision as that contended for by the appellant:
Section 4886 provides that " any person who has invented or
discovered any new and useful art, machine, etc., or any new
and useful improvement thereof, not known or used by others
in this country, before his invention or discovery thereof,
*and not patented or described in any printed publication in
this or any foreign country,* before his invention or discovery
thereof, or more than two years prior to his application, and
not in public use or on sale in this country for more than two
years prior to his application, unless the same is proved to
have been abandoned, may, upon payment of fees, etc., obtain
a patent therefor."

This section has no reference whatever to any *application*
that may be filed in a foreign office, but it has reference to
an existing patent that may have been issued in a foreign
country that contains evidence that negatives the alleged
novelty of an invention described in an application filed in
the Patent Office here.    Nor does section 4887, as amended
by the act of March 3, 1897, make any provision for giving
effect to the mere filing of an application for a patent in a
foreign office, to be used in a contest of priority in an inter-
ference proceeding in this country.    That section provides that

" no person otherwise entitled thereto shall be debarred from receiving a patent for his invention or discovery, nor shall any patent be declared invalid, *by reason of its having been first patented or caused to be patented* by the inventor, or his legal representatives or assigns, *in a foreign country,* unless the application for said foreign patent was filed more than seven months prior to the filing of the application in this country, in which case no patent shall be granted in this country."

This section manifestly has no reference to any question of priority as between contesting inventors. The section simply prescribes the condition or limitation under which a patent may be obtained and held valid in this country, though the invention may be first patented by the inventor, or his legal representatives, in a foreign country. It has no application whatever to a case like the present. And it is equally clear that section 4923 of the Revised Statutes contains nothing that applies to this case. That section only provides that a patent shall not be void on account of previous use in a foreign country, before the invention or discovery thereof, provided it had not been patented or described in a printed publication.

It is clear that an application for a patent filed in a foreign office affords no evidence of priority of invention in an interference proceeding in the Patent Office in this country. There is no law that recognizes such proceeding as competent evidence in an interference proceeding in our Patent Office. A foreign patent is admissible on an issue of priority, but only as of the date that it actually became a patent; not of a date established by relation to the application upon which it was granted. A foreign patent is competent evidence, by force of the statute, to negative the alleged novelty of an invention described in a pending application; but, as we have before stated, the French patent, alleged to have been granted on July 18, 1900, has not been exhibited in evidence. If it were in evidence, however, it would not affect the result. Priority of invention would still have to be awarded to Brown,— the evidence showing conception

by Brown in April, 1900, and the exercise of due diligence in the construction and reduction to practice of the invention in the latter part of July, 1900.

It follows from what we have said that the decision of the Commissioner of Patents must be affirmed.    The case with this opinion will be certified to the Commissioner of Patents as directed by law.                                      *Affirmed.*

On January 21, 1903, a petition on behalf of the appellant was filed, for the allowance of an appeal or writ of error to the Supreme Court of the United States.    The petition was denied February 4, 1903, Mr. Chief Justice ALVEY delivering the opinion of the Court:

The appellant in this case has by petition prayed for the allowance by this court of a writ of error or an appeal to the Supreme Court of the United States, from the opinion or decision of this court recently rendered on appeal from the decision of the Commissioner of Patents, in a matter of interference declared in the Patent Office.    There is no final judgment of this court rendered in such cases, nor is there any such judgment required or authorized to be rendered, not even for costs of the appeal.    This court is simply required in such cases, after hearing and deciding the points as presented, instead of entering judgment here, to return to the Commissioner of Patents a certificate of the proceedings and decision of this court, to be entered of record in the Patent Office, to govern the further proceedings in the case. But it is declared by the statute that no opinion of this court in any such case shall preclude any person interested from the right to contest the validity of any patent that may be granted by the Commissioner of Patents.    Rev. Stats. U. S., Secs. 780, 4914.

There is no provision of any statute, within our knowledge, that authorizes a writ of error or an appeal to the Supreme Court of the United States in such case as the present. It would seem clear that the case is not within the purview of section 8 of the act of Congress of February 9, 1893, pro-

viding for the establishment of this court. That section only applies to cases where final judgments by this court have been entered, and not to decisions to be made and certified to the Patent Office, under the special directions of the statute. We must therefore decline to allow either a writ of error or an appeal to the Supreme Court; but this disallowance of the writ of error or appeal by this court will not in any manner prejudice any application that the party may think proper to make to any one of the justices of the Supreme Court for the allowance of writ of error or appeal.

Neither writ of error nor appeal will be allowed by this court; and the clerk will so notify counsel filing the application.                                   *Denied.*